[Civ. No. 9766. Second Appellate District, Division Two.—June 8, 1934.]

ROBERT S. MacALISTER, Petitioner, v. GEORGE W. C. BAKER et al., Respondents.

Loren A. Butts for Petitioner.

Ray L. Chesebro, City Attorney, and Robert F. Shippee for Respondents.

John J. Beck, as *Amicus Curiae* on Behalf of Respondents.

STEPHENS, P. J.—Petitioner herein prays that we issue the writ of mandate to require the councilmen of the city of Los Angeles to recognize him as a duly appointed councilman. Our alternative writ heretofore issued and the councilmen have appeared by demurrer and by return.

Under charter provisions the city of Los Angeles is geographically divided into fifteen districts, and the legislative body designated as the council is composed of one

councilman for each district. Nowhere in the charter is it specifically required that the councilman for a district shall reside in such district, although the election provisions of the charter provide that no one can be a candidate at a primary or general election for councilman for any district unless he has been a resident of the district for the two years last past. Originally this provision was not in the charter but subsequently the charter was amended in this particular. In this regard section 9 of the charter is significant: "An office becomes vacant when the incumbent dies . . . or ceases to be a *resident* of the *city,* where residence therein is made a qualification for the office." There is no mention here as to residence of a councilman in the district he represents. Section 268 of the charter provides: "In the event of a vacancy . . . in any elective office the council shall fill the same by appointment." Section 12 provides: "In all voting upon the appointment . . . of officers, the members of the council . . . shall vote by open ballot or call of the roll, and the ballot or vote of each member shall be spread upon the minutes." Section 25 of the charter, so far as applicable, says: "Except as otherwise in this charter provided, action by the council shall be taken by a majority vote of the entire membership of the council." The filling of a vacancy is not otherwise provided for.

We have recited these provisions as an aid to the clarity of this opinion, although it should be understood at the outset that the question whether or not petitioner was a resident of a certain district when the council was voting to fill a vacancy, or whether or not the charter requires such a residence, is not before us in this proceeding. This is not a trial of the qualifications of petitioner to sit as a councilman, but is a judicial inquiry as to the legal effect of certain council proceedings, whereby petitioner was first declared appointed and then such appointment was declared to have been reconsidered.

A question will arise herein as to the necessity of a certificate of election, and we therefore discuss the charter requirements therefor. A "certificate of election" is by the charter specifically required as to the *election by vote of the people* of all elective officers. No such requirement specifically applies to the appointment of any officers, and the only mention in the charter referring at all thereto

is the following concluding sentence of section 9: "Should any officer fail to qualify within ten days from the time he receives his certificate of election or *appointment*, the office to which he was elected or *appointed* shall be deemed vacant for the purpose of filling the same by appointment." It will hereinafter be shown that a certificate of election or appointment is a ministerial duty and does not affect the legality of the election or appointment. However, the mere incidental mention of a *certificate of appointment*, where there is none required by any section of the charter, along with the mention of a *certificate of election*, where a charter section requires it as to elective officers, convinces us that it was an inadvertent inclusion and is of no effect.

All of the facts used in this opinion are taken from a written stipulation on behalf of all the parties and filed in the proceeding. On May 8, 1934, the council convened, all members being present. The president stated: "The question before the council is on the filling of the vacancy in the Eleventh Council District, and the clerk will record the vote for the respective candidates heretofore considered. As your name is called you will answer to the roll by stating the name of the person whom you desire to fill the vacancy." The roll was called and petitioner received nine votes. A motion was then made and seconded "that the appointment of Robert S. MacAlister by the council, to fill the vacancy in the Eleventh Council District, be made unanimous." Whereupon, without putting the question in any way, the president, hearing no objection, instructed the clerk to record the appointment of petitioner to fill the vacancy in the Eleventh Council District, by a unanimous vote. Thereafter the council adjourned. Upon the council's convening on May 9th, Councilman Thrasher made a motion, which was seconded by Councilman Baker, "that the vote by which Robert S. MacAlister was appointed to fill the vacancy in the Eleventh Council District be reconsidered". The president declared the motion out of order. Councilman Thrasher appealed from the decision of the chair, which appeal was duly seconded by Councilman Baker, the chair was not sustained and the motion to reconsider was put and carried.

On the 10th of May, 1934, petitioner took the oath of office before a notary public, the city clerk having been

restrained from administering it by a superior court order, and demanded of the council that he be allowed to participate in the council proceedings as a councilman, but this has been denied him.

Respondents claim that the oath of office taken before a notary public is ineffective, as the city clerk alone can administer the oath. The only basis for this claim is that the charter authorizes the clerk to administer such an oath. But this is not exclusive, and the oath before the notary was effective for all purposes.

We come now directly to the reconsideration proceedings. We gain from the authorities that an appointment to office is complete and beyond change, annulment or reconsideration by the appointing power when everything requiring the action of the appointing power has been done. The authorities are not entirely harmonious in their determination of just what is required to be done by the appointing power. After a thorough review of the decisions, however, we think the doctrine of the best reasoned cases justifies the conclusion that the appointing power is executive in nature, and anything that is definitely required to be done by a clerk after the executive has acted is ministerial, and that the appointment is complete and not subject to reconsideration even if the clerk has not acted. This reasoning, carried into actions by assemblages such as city councils, carries us to the conclusion that appointments of officers through the choice of the membership of an assembly is none the less executive in nature and that its selection by vote is the act of appointment, incapable of being affected by the requirement of subsequent clerical action or parliamentary procedure.

In *Marbury* v. *Madison,* 1 Cranch, 54 [2 L. Ed. 60], Chief Justice Marshall held that the appointment was complete after confirmation by the senate when, but not before, the president signed the commission required by him to be signed, but that the affixing of the seal by the Secretary of State was a ministerial act and not a part of the appointment. He announced the rule that the appointment was complete when the last act of the appointing power had been performed. In *Conger* v. *Gilmer,* 32 Cal. 75, our own Supreme Court commented extensively on *Marbury* v. *Madison, supra,* and held that the appointment by a board of

supervisors of a county was not complete, hence not effective, until the board had issued its commission signed by the proper officers of the board as the law then provided. This case also distinguishes executive from legislative acts by the following paragraph quoted from the opinion: "The fact that Boards of Supervisors, when they exercise the appointing power, do so by first taking a vote, does not affect the character of the power or render it at all different from what it is when exercised by the Governor. The Board acts by majorities, and in all cases the sense of the Board has therefore necessarily to be ascertained by taking a vote. The will of the Board can be ascertained in no other way, and the vote serves that purpose only, and does not convert the power exercised by them from that of 'appointment' to that of 'election'." This case also holds that the issuance of a commission to an elective office is a ministerial act.

In *State* v. *Barbour*, 53 Conn. 76 [22 Atl. 686, 55 Am. Rep. 65], the common council of Hartford was proceeding under its charter to appoint a prosecuting attorney. A clear majority voted for Coogan. Two resolutions were then passed, one declaring the ballot null and void, the other declaring Barbour elected. The court says: "It will be observed that the business of the convention was limited to making appointments. For all the purposes of this case we may assume that its sole business was to appoint a prosecuting attorney, and that it had no other powers or duties. It had but one thing to do and, when that was done, its powers were exhausted. Unlike legislative bodies convened for purposes of ordinary legislation, it had no power to enact and repeal, and its power to reconsider was very limited, being confined to the preliminary proceedings." The court referred at length to the Marbury-Madison and Conger-Gilmer cases and held that there was no required act to be done by the council after its choice expressed by ballot and held Coogan the legal appointee. Many cases are analyzed in this opinion, including *State* v. *Foster*, 2 Halst. (7 N. J. L.) 101, wherein the court held that reconsideration under parliamentary law was proper in a similar case. The court says: "We cannot regard that case as an authority controlling or materially influencing our decision, for several reasons. It was hastily decided and manifestly was not well considered. It confounds

legislative proceedings with executive acts and applies the rules regulating the former to the latter, while such rules are applicable only to a limited extent. It assumes that the convention had power to undo as well as to do, to remove as well as to appoint."

In *State* v. *Phillips,* 79 Me. 506 [11 Atl. 274], under facts similar to *State* v. *Barbour, supra,* the court says: "We are aware of no authority which holds that when the election by ballot is declared and entered of record, it may be reconsidered at an adjourned meeting on a subsequent day and a new election had. When the aldermen balloted and declared the election of Blaisdell, and it was recorded, their power over the election to that office was exhausted, unless he should decline to accept it."

In the case of *State* v. *Wadhams,* 64 Minn. 318 [67 N. W. 64], the court says: " . . . he" (the appointee) "could not be deprived of it" (the office) "by any subsequent reconsideration of the vote whereby his appointment was duly confirmed." In the case of *State* v. *Tyrrell,* 158 Wis. 425 [149 N. W. 280, Ann. Cas. 1915E, 270], the court held that the issuing of the required certificate "was ministerial and no part of the appointing power". *Draper* v. *State,* 175 Ala. 547 [57 So. 772], as reported in Ann. Cas. 1914D, is in harmony with these referred to cases and is accompanied by a complete note and collation of authorities. There are cases not in harmony with the doctrines of the above cases, but some of them, if not most of them, can be distinguished in fact.

■ While we are convinced that reconsideration of an executive act of the council cannot be had and that parliamentary rules relating thereto do not apply, except in a limited way to preliminary proceedings, we deem it appropriate to more particularly consider the proceedings had under the motion to reconsider. The charter provides that "the council shall have power to prescribe the rules of its proceedings" and the council has adopted a rule adopting Robert's Rules of Order as to parliamentary matters not otherwise provided for. Respondents cite Robert's Rules of Order, wherein the subject of reconsideration is treated, and stress the following: "It is in order at any time . . . during the day on which a motion has been acted upon, or the next succeeding day to move to 'Reconsider the vote'

... This motion can be applied to the vote on every other question except ... a vote electing to office one who is present and does not decline.'' (Petitioner was not present.) The quotation, according to respondents, is from Robert's Rules of Order, edition 1895, Griggs and Company, publishers. The Los Angeles County law library furnishes us with an edition of Robert's Rules of Order copyrighted as late as 1915 and published by another house. There is much difference and much re-arrangement in the later edition. The Los Angeles charter was adopted by the people in 1923.

But aside from all that has gone before, the reconsideration proceedings must be disregarded for the reason that Robert's Rules of Order, concurred in by every accepted parliamentary procedure unless specifically excepted, provide that the motion to reconsider ''must be made ... by a member who voted with the prevailing side''. Neither Mr. Thrasher, who made the motion to reconsider, nor Mr. Baker, who seconded it, voted with the prevailing side. Again, if respondents suggest that the vote for petitioner was made unanimous and that therefore upon the final vote all of the councilmen voted on the prevailing side, we shall answer that this suggestion is refuted by three sanctions: First, under the authorities cited herein it is apparent that the council had completed 'its appointment when the roll-call had been made and recorded; second, that the charter authorizes but two methods of voting on appointments, by ballot or by roll-call, and the motion was neither; and third, the motion was never put. The president evidently considered it informal and complimentary, and merely stated it could be so entered since he heard no objection thereto.

Upon the foregoing opinion, we hold that petitioner was legally appointed a councilman.

The writ will issue as prayed.

Desmond, J., and Archbald, J., *pro tem.*, concurred.