BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
CAL CAMARA has requested leave to sue in quo warranto upon the following question:
Is Art Bishop unlawfully holding the office of director of the Mojave Water Agency because the office was not vacant at the time of his appointment?
 CONCLUSION
Whether Art Bishop is unlawfully holding the office of director of the Mojave Water Agency because the office was not vacant at the time of his appointment presents substantial questions of fact and law warranting judicial resolution.
 ANALYSIS
In 1959, the Legislature created the Mojave Water Agency ("Agency"). (Stats. 1959, ch. 2146, §§ 1-35, pp. 5114-5147; see West's Ann. Wat. — Appen. (1999) ch. 97, §§ 1-48.5, pp. 193-242; 3 Deering's Ann. Wat. — Uncod. Acts (1970 ed.) Act 9095, §§ 1-38, pp. 510-548, (2006 supp.) Act 9095, §§ 1.5-48.5, pp. 261-288.)[1] Its purpose is to provide water for the use of the lands and inhabitants within its territory. (§ 1.5.) The Agency has a governing board of directors ("Board") of seven members serving four-year terms, each representing one of the Agency's seven geographical divisions. (§ 4.) A vacancy "in the office of director shall be filled by appointment by a majority of the remaining directors and as provided in Government Code section 1780." (Ibid.)[2]
Relator alleges that on October 25, 2004, he was duly appointed by the Board as a director of the Agency representing Division No. 5 and thus no vacancy existed when Defendant was later appointed by the Board to represent the same division. Accordingly, Relator contends that Defendant is unlawfully holding his office. Defendant responds that Relator was not duly appointed on October 25, 2004, and thus his own appointment on October 28, 2004, was valid.
Section 803 of the Code of Civil Procedure provides that an action in the nature of quo warranto "may be brought by the attorney-general, in the name of the people of this state, upon his own information, or upon the complaint of a private party, against any person who usurps, intrudes into, or unlawfully holds or exercises any public office. . . ." It is the exclusive remedy in cases where it is available. (Nicolopulos v. City ofLawndale (2001) 91 Cal.App.4th 1221, 1225; Cooper v. LeslieSalt Co. (1969) 70 Cal.2d 627, 633.) We have previously determined that a director of the board of a "special act" water district holds a public office for purposes of a quo warranto action. (76 Ops.Cal.Atty.Gen. 81, 83 (1993).)
Where, as here, a person claims to be the rightful holder of an office occupied by another, he presents a "right distinct in kind from the right of the general public enforceable by an action in the nature of quo warranto." (International Assn. of FireFighters v. City of Oakland (1985) 174 Cal.App.3d 687, 697; see 84 Ops.Cal.Atty.Gen. 206, 207 (2001). If leave to sue is granted, the current officeholder must be a party to the quo warranto proceeding with the right to be heard. (Nicolopulos v. City ofLawndale, supra, 91 Cal.App.4th at p. 1226; Klose v. SuperiorCourt (1950) 96 Cal.App.2d 913, 925; see 86 Ops.Cal.Atty.Gen. 82, 83 (2003).)
In deciding whether to grant the application, we consider whether it presents a substantial question of fact or law appropriate for judicial resolution, and if so, whether the proposed action would serve the overall public interest. (88 Ops.Cal.Atty.Gen. 25, 26 (2005); 86 Ops.Cal.Atty.Gen., supra,
at p. 83; 85 Ops.Cal.Atty.Gen. 101, 102 (2002).) "`In passing upon leave to sue in the name of the People of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of fact or question of law that the public interest requires to be determined by a court in an action in quo warranto.' [Citation.]" (84 Ops.Cal.Atty.Gen. 135, 140 (2001).)
A. Statement of Facts
On August 18, 2004, the Agency director representing Division No. 5 submitted his resignation to the Board. At a special meeting called on October 25, 2004, the Board conducted interviews of six candidates for the office, including Relator and Defendant. Item No. 5 on the agenda for the meeting stated: "Interview of Applicants for Division No. 5 Director Position," and item No. 6 stated: "Discussion and Possible Selection of Candidate for Division No. 5 Director Position." Following the interviews, a motion was made to select Relator to fill the vacant seat. The Board's minutes of the meeting reflect the following:
 "Director Page then made a motion that the Board vote on Mr. Camara to fill the Division 5 seat. Director Ventura seconded the motion.
 "Director Fortuyne requested that the secretary read the motion. Mrs. Thornell stated that the motion by Director Page was for the Board to take a vote on Mr. Camara.
 "Mr. Kennedy stated that, in other words, this would be to appoint him to the position, which Director Page confirmed. Mrs. Thornell stated that this would be to select Mr. Camara.
 "Mrs. Thornell called the roll as follows, which passed on a vote of 5-0-1. . . ."
A transcript of the tape recording of the above-described portion of the meeting was prepared by the Board's executive secretary. The transcript is as follows:
 "Director Page: Okay. I'd like to make a motion that we vote . . . take a vote on Mr. Camara to fill . . . Division 5 seat.
"Director Ventura: I'll second it.
"Director Lowry: I'll second it.
"Director Cox: Who seconded that?
"Directory Lowry: I did.
 "Director Hall: Can we split the second between the two of them? No I was just kidding (laughter).
 "Director Page: Jim (Director Ventura) hasn't done one. Let him have one.
"(laughter and inaudible comments)
"Director Hall: Well, let's give it to Jim.
"Director Ventura: It's the only one I've understood.
"(laughter)
 "Director Fortyune: Madame Secretary, the motion was. . . . .?
 "Mrs. Thornell: The motion by Director Page was for the Board to take a vote on Mr. Camara.
"Mr. Kennedy: In other words, to appoint.
"Director Page: To appoint him to fill the . . .
 "Mrs. Thornell: To select him for the position . . . (inaudible) . . .
"Director Ventura: He's the high vote getter.
"Director Hall: Roll call.
"Mrs. Thornell called the roll as follows:
 "Director Cox: Mr. Chairman, I will abstain from this vote on the grounds that I feel the integrity of this process has been impugned.
"Director Ventura: Yes
"Director Hall: Yes
"Director Page: Yes
"Director Lowry: Yes
"Director Fortyune: Yes
 "Director Fortyune: Done. This takes a burden off our backs.
 "Mrs. Thornell: It's 5-0, with Director Cox abstaining.
 "Director Page: It's still . . . (inaudible) . . . that Director was.
"Director Hall: Can we send it to an election?
"Director Page: I think it's wrong.
 "Director Cox: I want to see the data . . . (inaudible)
 "Director Lowry: I'm not happy with it, but I'm . . . (inaudible).
 "Director Fortyune: Mr. Chair, do we have any comments from legal counsel?
 "Director Hall: Are there any comments from the consultant first?
"Director Fortyune: From legal counsel?
"Director Hall: From legal counsel . . . okay.
 "Mr. Kennedy: I guess the only comment would be to arrange for the swearing in of the new appointee at the convenience of staff and the Board."
After the meeting, the Board's executive secretary telephoned Relator at his home and informed him that he had been appointed to fill the vacancy. The next day, October 26, Relator took the oath of office from a notary public.
At its meeting on October 28, 2004, the Board discussed the selection of Relator under agenda item No. 9, which stated: "Appointment and Administration of Oath of Office to Newly Appointed Division No. 5 Director." After extensive public comment, a motion was made to rescind the October 25 vote concerning Relator. During the Board's discussion of the motion, its legal counsel indicated that the wording of agenda item No. 5 for the October 25 special meeting was not sufficient to convey notice to the public that an appointment could take place at the meeting. After further discussion, the motion to rescind passed on a vote of 4-1, with one director absent. A motion was then made to appoint Defendant, which passed on a vote of 4-1. Defendant was thereupon administered the oath of office by the Board's executive secretary.
B. Issues of Fact and Law
In MacAlister v. Baker (1934) 139 Cal.App. 183, the Los Angeles City Council appointed Robert MacAlister to a vacancy on the council. After making the appointment, the council instructed the clerk to record the appointment, and it then adjourned. When the council convened on the following day, a motion was made to reconsider MacAlister's appointment, and the motion carried. MacAlister thereafter took the oath of office before a notary public. The court agreed with MacAlister that he had been duly appointed and that the appointment could not be reconsidered:
 ". . . We gain from the authorities that an appointment to office is complete and beyond change, annulment, or reconsideration by the appointing power when everything requiring the action of the appointing power has been done. The authorities are not entirely harmonious in their determination of just what is required to be done by the appointing power. After a thorough review of the decisions, however, we think the doctrine of the best-reasoned cases justifies the conclusion that the appointing power is executive in nature, and anything that is definitely required to be done by a clerk after the executive has acted is ministerial, and that the appointment is complete and not subject to reconsideration, even if the clerk has not acted. This reasoning, carried into actions by assemblages such as city councils, carries us to the conclusion that appointments of officers through the choice of the membership of an assembly is none the less executive in nature and that its selection by vote is the act of appointment, incapable of being affected by the requirement of subsequent clerical action or parliamentary procedure." (Id. at p. 187.)
Defendant argues that MacAlister is inapplicable here because Relator was "selected" to be a "candidate" and was not "appointed" to be a "director" because an appointment at the October 25 meeting would have constituted a violation of the notice requirements for special meetings under the Ralph M. Brown Act (Gov. Code, §§ 54950-54963). Among other things, this statutory scheme requires a public agency, such as the Board, to post a notice of "the business to be transacted" at a special meeting "at least 24 hours prior to the special meeting in a location that is freely accessible to members of the public." (Gov. Code, § 54956.) "No other business shall be considered at these meetings by the legislative body." (Ibid.)
Specifically, Defendant contends that agenda item No. 6 for the October 25 meeting, "Discussion and Possible Selection of Candidate for Division No. 5 Position," when read in conjunction with agenda item No. 9 for the October 28 meeting, "Appointment and Administration of Oath to Newly Appointed . . . Director," prevented the Board from doing anything more than "selecting" Relator as a "candidate" for "appointment" to be made at the October 28 meeting. Defendant argues that since Relator concededly was not "appointed" at the October 28 meeting, the Division No. 5 office was vacant when the Board appointed Defendant.
In response, Relator points out that according to the notice for the October 25 meeting, the Board was not selecting
candidates but rather was interviewing candidates for the vacant office, followed by "[d]iscussion and possible selection of candidate for Division No. 5 Director Position." The public was thus informed that one of the candidates might be chosen for the Division No. 5 office on October 25. There was no apparent misunderstanding at the meeting by anyone in attendance; the Board members understood that they were making an appointment when they voted in favor of Relator. Relator was notified of his "appointment" after the meeting by the Board's executive secretary. Relator argues that the public was not misled by the description on the posted notice of the "business to be transacted" at the special meeting.
It is well settled that the power of appointment is exercised when the last act has been performed that is required of the person possessing the power of appointment. (See In reGovernorship (1979) 26 Cal.3d 110, 121.) Uncompleted appointments, such as those requiring the issuance of an executive commission, are subject to withdrawal. (See Conger v.Gilmer (1867) 32 Cal. 75 [board of supervisors could reconsider appointment before issuing appointee a commission].) If the last act required is one performed by someone other than the appointing power, such act is ministerial only, and its lack of performance does not make the appointment incomplete. (MacAlister v. Baker, supra, 139 Cal.App.3d at p. 471.) The acts of "selection" and of "appointment" are not mutually exclusive. As stated in MacAlister v. Baker, supra,139 Cal.App.4th 183, a "selection by vote is the act of appointment." (Id. at p. 187.)
Accordingly, we believe that Relator has raised substantial questions of fact and law concerning whether he was appointed by the Board to the vacant Division No. 5 office on October 25, 2004. Defendant's counter arguments may be considered in a quo warranto action.[3] Here, we do not decide how a court will ultimately resolve Relator's claim to rightful occupancy of the office currently held by Defendant. As we stated in 12 Ops.Cal.Atty.Gen. 340, 341 (1949):
 ". . . [I]n acting upon an application for leave to sue in the name of the people of the State, it is not the province of the Attorney General to pass upon the issues in controversy, but rather to determine whether there exists a state of facts or question of law that should be determined by a court in an action quo warranto; that the action of the Attorney General is a preliminary investigation, and the granting of the leave is not an indication that the position taken by the relator is correct, but rather that the question should be judicially determined and that quo warranto is the only proper remedy."
C. Public Interest
As a general rule, we view the resolution of a substantial question of fact or law as serving a sufficient "public interest" to warrant the granting of leave to sue in quo warranto. (85 Ops.Cal.Atty.Gen. 90, 93-94 (2002); 82 Ops.Cal.Atty.Gen. 78, 81-82 (1999).) Leave to sue will be denied only in the presence of other overriding considerations. (81 Ops.Cal.Atty.Gen. 94, 98 (1998).) Such considerations include the existence of prior litigation (36 Ops.Cal.Atty.Gen. 317, 319 (1960)), whether the issues are pending in a judicial action (73 Ops.Cal.Atty.Gen. 183, 190 (1990)), and the relative shortness of time remaining on the term of office in question (83 Ops.Cal.Atty.Gen. 181, 184 (2000) [four months.]). We find no such overriding considerations here.
We conclude that both the Board and the members of the public have an interest in a judicial resolution regarding the appointment process undertaken by the Board in filling the Division No. 5 office. (See 84 Ops.Cal.Atty.Gen., supra, at p. 140.) Accordingly, the application for leave to sue in quo warranto is GRANTED.
[1] All references hereafter to this uncodified act are by section number only as found in West's Annotated Codes and Deering's California Codes Annotated. (See Antelope Valley v.East Kern Water Agency (1998) 204 Cal.App.3d 990, 992, fn. 2.)
[2] If the directors do not fill the vacancy in a timely manner, the county board of supervisors may make the appointment. (Gov. Code, § 1780.)
[3] We note that in Furtado v. Sierra Community College
(1998) 68 Cal.App.4th 876, a community college board of trustees conducted a closed session concerning the renewal of a librarian's employment contract. The agenda item described the topic as "public employee performance evaluation." After the trustees denied renewal of her contract, the employee filed a lawsuit, arguing that the agenda description should have been "public employee discipline/dismissal/release." The court disagreed, finding that "the `evaluation' agenda item was neither erroneous nor misleading." (Id. at p. 883.)